UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | 96-CR-355 (ARR) |
| -against- | NOT FOR ELECTRONIC OR PRINT PUBLICATION |
| JOHN MARIN HENOA, | **OPINION & ORDER** |
| *Defendant*. | |

ROSS, United States District Judge:

Defendant, John Marin Henoa ("Mr. Marin"), has filed a motion for a sentence reduction, also known as a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* Def.'s Mot. Compassionate Release ("Def.'s Mot."), ECF No. 21. The government opposes. *See* Govt. Opp'n, ECF No. 25. For the reasons set forth below, I deny Mr. Marin's motion.

## BACKGROUND

I assume the parties' general familiarity with the underlying facts of this case. In brief, Mr. Marin was "the leading member" of Los Tuzos, a criminal organization founded "for the purpose of collecting narcotics trafficking debts, and administering retribution for the failure to pay such debts." Presentence Investigation Report ¶¶ 4, 33 ("PSR"). The organization earned money "through fees paid for the commission of murders, kidnappings, and debt collection." *Id.* ¶ 4. In December 1995, at the age of twenty, Mr. Marin was arrested for his personal involvement in numerous murders—some of which he organized or managed—that took place between 1993 and 1995. *Id.* ¶¶ 33, 39, 45, 51, 87, 93, 99. Mr. Marin later pleaded guilty to one count of aiding and abetting murder, eight counts of murder in aid of racketeering, and one count of conspiracy to murder. *Id.* ¶ 1. Although the guidelines range for Mr. Marin's crimes was life imprisonment, I

departed from the guidelines due to the substantial assistance he provided to the government. *Id.* ¶ 158; *see also* Judgment 6. On each murder count, I sentenced Mr. Marin to 420 months' imprisonment, and on the conspiracy count I sentenced him to 120 months' imprisonment. *See* Judgment 2. These sentences run concurrently. *Id.*[1]

The instant motion for compassionate release is Mr. Marin's second. He first moved for compassionate release in 2021 and argued that the COVID-19 pandemic presented an extraordinary and compelling reason to reduce his sentence. *See* First Mot. for Compassionate Release 6–11, ECF No. 15-1. I denied Mr. Marin's motion because he failed to establish that the COVID-19 pandemic posed a heightened risk to him in particular. *See United States v. Henoa*, No. 96-CR-355 (ARR), at 5–7 (E.D.N.Y. Feb. 22, 2021), ECF No. 20. I further determined that the seriousness of Mr. Marin's crimes militated against his release. *Id.* at 7. In November 2023, Mr. Marin filed the instant motion for compassionate relief, and the government filed its opposition in January 2024.

## LEGAL STANDARD

The First Step Act allows criminal defendants to move for "[m]odification of an imposed term of imprisonment" before a federal sentencing court. 18 U.S.C. § 3582(c). To qualify for such relief, defendants bear the burden of showing: (1) that they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf," or that thirty days have lapsed "from the receipt of such a request by the warden of [their] facility, whichever is

---

[1] In a separate case, Mr. Marin pleaded guilty to three counts of conspiracy to commit murder in aid of racketeering and one count of use of a firearm during a crime of violence. *See* Judgment 1, *United States v. Henoa*, No. 99-CR-29. For these crimes, I sentenced Mr. Marin to a total of 420 months imprisonment: 120 months for each conspiracy count and 60 months for the firearm count, all to be served consecutively. *Id.* at 2. This sentence runs concurrently with the sentences imposed in this case. *Id.*

earlier"; (2) that "extraordinary and compelling reasons warrant" a reduction in the term of imprisonment; (3) that "the [applicable] factors set forth in section 3553(a)" do not militate against release, despite the existence of extraordinary or compelling reasons; and (4) that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission."[2] *Id.* § 3582(c)(1)(A); *see also United States v. Cato*, No. 16-CR-326 (ARR), 2020 WL 5709177, at *3 (E.D.N.Y. Sept. 24, 2020) (noting that a defendant bears the burden of proof). "Even if a defendant carries this burden, 'district courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction.'" *Cato*, 2020 WL 5709177, at *3 (quoting *United States v. Tagliaferri*, 13-CR-115, 2019 WL 6307494, at *3 (S.D.N.Y. Nov. 25, 2019)) (quotation marks omitted).

Policy statement U.S.S.G. § 1B1.13 sets forth the list of "extraordinary and compelling reasons" that could warrant the reduction of a defendant's sentence. These reasons include: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant was a victim of abuse; (5) a change in the law if the defendant received an unusually long sentence and has served 10 years of that term of

---

[2] In 2020, the Second Circuit determined that the applicable policy statement—U.S.S.G. § 1B1.13—does not apply to motions for compassionate release filed by defendants because the statement's language referenced only motions filed by the Director of the Bureau of Prisons. *See United States v. Brooker*, 976 F.3d 228, 235–37 (2d Cir. 2020). The Sentencing Commission has since amended the policy statement, such that it now explicitly covers motions for compassionate release brought by individual defendants. *See* U.S.S.G. § 1B1.13(a) ("Upon motion of the Director of the Bureau of Prisons *or the defendant*, . . . the court may reduce a term of imprisonment . . . .") (emphasis added). As a result, courts in this circuit have determined that "*Brooker* does not apply to the new version of Policy Statement 1B1.13 . . . . [and that] to grant a motion for compassionate release, a court must now . . . find that granting such relief is consistent with Policy Statement 1B1.13." *United States v. Feliz*, No. 16-CR-809, 2023 WL 8275897, at *4 (S.D.N.Y. Nov. 30, 2023) (quotation marks omitted); *see also United States v. Andrews*, No. 01-CR-450, 2023 WL 8477993, at *2–5 (S.D.N.Y. Dec. 7, 2023) (analyzing the recent amendments to Policy Statement 1B1.13 and applying it to a defendant's motion for compassionate release).

3

imprisonment; (6) rehabilitation, as long as it is not the only reason; and (7) other reasons which "are similar in gravity" to the first four reasons. U.S.S.G. § 1B1.13(b)–(d). Even if extraordinary and compelling reasons exist, I must consider the 18 U.S.C. § 3553(a) factors to determine whether a sentence reduction is warranted. *See* 18 U.S.C. § 3582(c)(1)(A). These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . .
> (5) any pertinent [Sentencing Commission] policy statement . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

## DISCUSSION

### I. Extraordinary and Compelling Reasons

Mr. Marin raises several arguments for a sentence reduction. First, he contends that his youth at the time of his offenses, combined with his rehabilitation while in prison, serve as extraordinary and compelling reasons for his release. *See* Def.'s Mot. 11–16. Over the two years that Mr. Marin committed his offenses, he was between 18 and 20 years old, which, he argues, explains "his then impetuous behavior." *Id.* at 13–14. He also emphasizes that during his childhood he was surrounded by "drugs and crime," and that, due to his age, he was "particularly vulnerable to [these] negative influences." *Id.* at 14. As to his rehabilitation, Mr. Marin explains that he has

4

"feelings of remorse . . . for his ill-considered conduct" and that he has "completed many treatments and self-help programs" since his imprisonment, including GED, Civil Rights History, Parenting, and Anger Management classes, among others. *Id.* at 11–12. He also touts that he has maintained "average conduct" during his decades of imprisonment and has received "only a few institutional write-ups." *Id.* at 12. Ultimately, Mr. Marin points to the "dramatic contrast" between his behavior at the time of his offenses and his post-incarceration conduct as evidence that he has matured and will not engage in criminal behavior in the future. *Id.*

Courts in this circuit have granted compassionate release to defendants who were young at the time of their offense. *See, e.g., United States v. Chan*, 645 F. Supp. 3d 71 (E.D.N.Y. 2022); *United States v. Ramsay*, 538 F. Supp. 3d 407 (S.D.N.Y. 2021). Youth at the time of offense standing alone, however, is not an extraordinary and compelling reason for a sentence reduction. *See United States v. Tran*, No. 90-CR-1019 (RPK), 2022 WL 7132195, at *2 (E.D.N.Y. Oct. 12, 2022). Instead, courts in this circuit "have consistently relied on a constellation of factors in combination with youth—typically including demonstrated rehabilitation—in finding that extraordinary and compelling reasons support[] a sentence reduction." *Id.* at *3 (collecting cases) (quotation marks omitted).

In both *Ramsay* and *Chan,* the courts granted the defendants' motions for compassionate release in recognition of the fact that they committed their murders under circumstances that made their youth a particular vulnerability. In *Ramsay*, the court emphasized that the defendant committed his two murders in a "high-pressure, time-sensitive, emotional context[]," in which adolescents, due to their still maturing brains, "tend to make riskier decisions" compared to adults. *Ramsay*, 538 F. Supp. 3d at 417–20, 424. And in *Chan*, the court explained that the defendant—who committed three murders as a member in a gang—was particularly susceptible to gang

5

recruitment and indoctrination due to his youth. 645 F. Supp. 3d at 77, 82. The court also pointed out that the defendant exhibited significant rehabilitation and cited as evidence his detailed statements of remorse and letters from others in the prison touting the defendant's character. *Id.* at 83.

Although Mr. Marin was young when he committed his offenses, other facts of his case weigh against recognizing his youth as an extraordinary and compelling reason for a sentence reduction. Unlike the defendant in *Ramsay*, Mr. Marin did not commit his offenses in a high-pressure, time-sensitive context. Instead, over the course of two years, Mr. Marin, on numerous occasions, agreed in advance to commit murders for pay. *See, e.g.,* PSR ¶¶ 17, 20, 22, 24, 25, 26. He was often responsible for the advance planning of these murders, which involved organizing how they would occur and recruiting others for assistance. *See id.* ¶¶ 20, 24–25, 33, 39, 45, 51, 87, 93, 99. These circumstances militate against reducing his sentence because of his youth. *See United States v. Chung*, No. 90-CR-1019 (RJD), 2023 WL 5522227, at *2–3 (E.D.N.Y. Aug. 7, 2023) (determining that the defendant's youth was not an extraordinary and compelling reason to reduce his sentence because he failed to "furnish a highly particularized account of his youth," and because other circumstances, including his leadership in the offenses and the fact that he was responsible for six murders, weighed against granting compassionate release); *United States v. Siraj*, No. 05-CR-104 (NG), 2023 WL 2569398, at *3 (E.D.N.Y. Mar. 20, 2023) (determining the defendant's adolescence did not support compassionate release because his offense "involved weeks of planning" and was therefore distinguishable from the "'high-pressure, time-sensitive' contexts in which courts have found that adolescents tend to make riskier decisions") (quoting *Ramsay*, 538 F. Supp. 3d at 420). Further, although Mr. Marin expresses remorse for his offenses and lists classes that he has taken while in prison, his documented efforts at rehabilitation are less

6

extensive than the evidence of rehabilitation that other defendants have offered in somewhat similar circumstances; this lack of support and specificity is another reason why he has failed to establish an extraordinary and compelling reason warranting a sentence reduction, despite his youth at the time of his offenses. *See Chung*, 2023 WL 5522227, at * 3 & n.3 (declining to grant the defendant compassionate release, despite his youth at the time of his offenses, partially because his efforts to demonstrate rehabilitation, which included coursework certificates, an average disciplinary record, and a few statements of remorse, were "far less expansive or poignant than the statements offered by [other defendants facing similar circumstances]"); *Tran*, 2022 WL 7132195, at *3 (declining to grant the defendant compassionate release because, despite his youth at the time of his offense, he did not produce sufficient evidence of rehabilitation, such as "letters of support, [or] certificates of course completion").

Mr. Marin also argues that I should grant his motion for compassionate release because "new changes in the law" have created a gross disparity between the sentence he is serving and the sentence that would be imposed today on a defendant who commits comparable crimes. *See* Def.'s Mot. 19–23. The Sentencing Commission has narrowly circumscribed when a change in the law may constitute an extraordinary and compelling reason for compassionate release. *See* U.S.S.G. § 1B1.13(b)(6), (c). For a change in the law to constitute an extraordinary and compelling reason the defendant must have: (1) received an unusually long sentence; (2) served at least ten years of the term of imprisonment; and (3) demonstrated that the change in the law will result in "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* These are the only circumstances in which I may consider a change in the law to be an extraordinary and compelling reason for compassionate release. *Id.* 1B1.13(c).

Mr. Marin argues that two changes in law—*Apprendi v. New Jersey*, 530 U.S. 466 (2000)

7

and *Alleyne v. United States*, 570 U.S. 99 (2013)—are relevant to his case. Under *Apprendi*, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 520 U.S. at 489. Similarly, under *Alleyne*, "facts that increase mandatory minimum sentences must [also] be submitted to the jury." 570 U.S. at 116.

Neither case constitutes an extraordinary and compelling reason warranting a sentence reduction in this case. First, Mr. Marin was sentenced in March 2001, *see* Judgment 1, and the Supreme Court decided *Apprendi* in June 2000. *Apprendi* was binding law at the time I sentenced Mr. Marin and, therefore, cannot constitute a change in the law for purposes of a sentence reduction. Second, Mr. Marin has failed to establish that he received an "unusually long sentence," which the policy statement requires of a defendant who argues that changes in law are extraordinary and compelling reasons for a sentence reduction. U.S.S.G. § 1B1.13(b)(6), (c). Mr. Marin argues that his sentence of 420 months is disparate to the sentences judges impose today for comparable crimes. Def.'s Mot. 17–18. For support, he cites national statistics on the average sentence for murder. *Id.* at 18 ("[T]he national average [sentence for murder] in 2018 was 291 months."). He also cites *United States v. Antoine*, a Maryland District Court case, in which the defendant was sentenced to 270 months' imprisonment for one count of conspiracy to distribute controlled substances and one count of discharging a firearm resulting in death during a drug trafficking crime. *See id.*; *see also* Judgment 1–2, *United States v. Antoine*, No. 19-CR-140, (D. Md. 2020), ECF No. 465.

Mr. Marin fails to acknowledge, however, that his sentence is longer than the average sentence for a single murder because he was convicted on eight counts of murder, one count of aiding and abetting murder, and another count of conspiracy to murder. PSR ¶ 1; *see also United*

8

*States v. Guzzo*, No. 95-CR-754 (MKB), 2023 WL 3578246, at *4 (E.D.N.Y. May 18, 2023) (explaining that the defendant's 456 months sentence was "not extraordinarily long in light of his eighteen convictions, which include[d] five murders in aid of racketeering"); 18 U.S.C. § 1959(a)(1) (listing the death penalty or life imprisonment as punishments for murder in aid of racketeering). In fact, in several cases involving crimes more closely analogous to Mr. Marin's, courts in this circuit have reduced defendants' sentences from life imprisonment to prison terms closer to Mr. Marin's thirty-five years. *See, e.g.*, *United States v. Russo*, 643 F. Supp. 3d 325, 331, 336 (E.D.N.Y. 2022) (reducing defendant's sentence for two murders in aid of racketeering, in addition to other crimes, from life imprisonment to thirty-five years); *Chan*, 645 F. Supp. 3d at 77, 84–85 (E.D.N.Y. 2022) (reducing defendant's sentence for three murders, in addition to other crimes, from life imprisonment to thirty-three years); *United States v. Ramirez*, 571 F. Supp. 3d 40, 42, 52 (S.D.N.Y. 2021) (reducing defendant's sentence for two murders, among other crimes, from forty eight years in prison to forty years in prison). Ultimately, Mr. Marin's 420 months sentence is not unusually long, and, as a result, I may not consider any changes in law as extraordinary and compelling reasons warranting a sentence reduction.

In the petition for compassionate release that Mr. Marin submitted to the Warden at the Federal Correctional Institution, Beaumont, he also argues that his sentence should be reduced because his status as a deportable non-citizen "subject[s] him to harsher conditions than an otherwise identical citizen." Def.'s Mot., Ex. A at 5. Specifically, he asserts that, due to his immigration status, he will likely be ineligible for 18 U.S.C. § 3624(c) pre-release benefits, which are designed to "afford . . . prisoner[s] a reasonable opportunity to adjust to and prepare for . . . reentry." *Id.* (quoting 18 U.S.C. § 3624(c)). Typically, these benefits result in a person's reassignment to a minimum-security facility, such as a halfway house, during the individual's last

9

year in prison. *See United States v. Restrepo*, 999 F.2d 640, 645 (2d Cir. 1993).

I decline to recognize the potential deprivation of these benefits as an extraordinary and compelling reason warranting Mr. Marin's early release. In analogous contexts, judges have determined that a defendant's immigration status does not constitute an extraordinary and compelling reason for compassionate release. *See, e.g.*, *United States v. Lisyansky*, No. 11-CR-986, 2023 WL 3571161, at *2 (S.D.N.Y. May 18, 2023) ("Defendant contends that because he is subject to an immigration detainer, he is ineligible for transfer to a halfway house or to receive a sentence reduction . . . . Defendant's immigration status does not constitute an extraordinary or compelling circumstance for his release."); *United States v. Nawaz*, No. 16-CR-431, 2020 WL 7773478, at *3 (S.D.N.Y. Dec. 30, 2020) (collecting similar cases). Further, the 18 U.S.C. § 3624(c) benefits are not guaranteed to anyone in prison, regardless of citizenship status; instead, the benefits are only permitted if the Director of the Bureau of Prisons determines that they are "practicable." 18 U.S.C. § 3624(c). Because these benefits are not guaranteed to anyone in prison, that Mr. Marin may not receive them does not constitute an extraordinary and compelling reason justifying his early release. *Cf. Zelaya-Romero v. United States*, No. 15-CR-174, 2023 WL 3001871, at *5 (S.D.N.Y. Apr. 19, 2023) (determining that "the unavailability of preferred conditions of confinement," including conditions of confinement that were denied to individuals based on their immigration status, is not an "extraordinary circumstance warranting a departure" from the sentencing guidelines) (quoting *Restrepo*, 999 F.2d at 644 (2d Cir. 1993)).

Accordingly, Mr. Marin has not satisfied the "extraordinary and compelling reasons" element of his compassionate release motion, and I deny his motion on that basis.

## II. Section 3553(a) Factors

Even assuming that Mr. Marin demonstrated that extraordinary and compelling reasons

10

were present in this case, the § 3553(a) factors militate against his release. Specifically, the nature and circumstances of Mr. Marin's offenses are exceptional and of the utmost seriousness. *See* 18 U.S.C. § 3553(a)(1). As previously discussed, Mr. Marin was "the leading member" of a criminal organization that earned fees through murders and kidnappings. PSR ¶¶ 4, 6, 33. He was also personally involved in eight murders and aided and abetted a ninth. *Id.* ¶ 1. That Mr. Marin has taken several classes and has expressed remorse, Def.'s Mot. 11–13, does not materially impact my view of his history and characteristics. *See* 18 U.S.C. § 3553(a)(1). Mr. Marin's crimes were violent, and they caused significant harm, which further weighs against a reduction in his sentence. *Id.* § 3553(a)(2). As a result, application of the § 3553(a) factors also fails to warrant a reduction of Mr. Marin's sentence.

## CONCLUSION

For the foregoing reasons, I deny Mr. Marin's motion for compassionate release.

SO ORDERED.

/s/
Allyne R. Ross
United States District Judge

Dated: February 22, 2024
Brooklyn, New York

11